CAROLINA SAVINGS BANK v. FLORENCE TOBACCO CO.

BILLS AND NOTES—NONSUIT—MAKERS—ENDORSERS.—The testimony in this case shows that the plaintiff treated and understood the parties, whose names were written on the back of the note as endorsers, and, as such, they are entitled to all the requirements of the law merchant at the hands of the bank.   Nonsuit proper.

Before NORTON, J., Darlington, November 2, 1894.   Affirmed.

Action by Carolina Savings Bank of Charleston, S. C., against Florence Tobacco Co., F. M. Rogers, jr., B. F. Williamson, Geo. W. Brown, P. A. Wilcox, C. M. Covington, and Smilie A. Gregg, on negotiable note.   Nonsuit granted. Plaintiff appeals.

*Messrs. Buist & Buist* and *Nettles & Nettles*, for appellant.

*Messrs. R. W. Boyd* and *C. A. Woods*, contra.

Oct. 15, 1895.   The opinion of the Court was delivered by

MR. JUSTICE POPE.   This action was commenced in the Court of Common Pleas for Darlington County, in said State, on the 9th day of July, 1894, and came on for trial before his Honor, Judge Norton, and a jury at the October term, 1894, of said Court.   After the plaintiff closed its tes-

timony a motion was made for a nonsuit by the defendants, B. F. Williamson, George W. Brown, P. A. Wilcox, C. M. Covington, and Smilie A. Gregg. This motion was granted, in a short order, by the presiding Judge. After entry of judgment thereon, the plaintiff appealed to this Court. These grounds of appeal, eight in number, have been treated in the argument before us as raising practically but four questions:

First. That, under the facts of the case, the parties whose names appear on the note occupy, in reference to the plaintiff, the holder of the note, the position of joint makers.

Second. That the evidence does not show a valid meeting of minds between plaintiff and Florence Tobacco Company for an extension of time obligatory on the plaintiff, and for a definite time.

Third. That whether such obligatory extension of time exists or not, the defendants cannot take advantage of the same as against the plaintiff, because they are liable upon the face of the note as joint makers, and the said instrument fails to disclose upon its face any relation of suretyship between said joint makers.

Fourth. The testimony discloses that the plaintiff was not aware that these defendants signed this note as an accommodation for Florence Tobacco Company, and it further shows that it is the holder of the said note for value before maturity; and, under no circumstances, therefore, can any question of suretyship as between the parties on this note be raised against the plaintiff.

Preliminary to any reference to the questions underlying this appeal, a statement by a brief summary of the facts constituting the history of the transaction between the parties should be made. The plaintiff is a bank duly chartered under our State laws, and located in the city of Charleston, in this State, of which George W. Williams is president, and George W. Williams, jr., is vice-president. The defendant, Florence Tobacco Company, is a corporation under the laws of this State, located in the town of Florence, in this

State, and engaged in the manufacture and sale of tobacco, of which the defendant, F. M. Rogers, jr., is president, and the defendants, F. M. Rogers, B. F. Williamson, George W. Brown, P. A. Wilcox, C. M. Covington, and Smilie A. Gregg, are the directors. The Florence Tobacco Company wishing to borrow some $3,500 net, addressed, through its president, F. M. Rogers, jr., a note to the plaintiff bank, on the 21st day of December, 1891, soliciting the loan by the bank of that amount, and on the 23d day of December, 1891, the bank, through its vice-president, George W. Williams, jr., answered, stating that the bank would discount the note of the company, endorsed by the parties mentioned, for six months, at eight per cent. per annum discount. On the 26th December, the Florence Tobacco Co. wrote to the bank, and on 2d January, 1892, the bank wrote to the president of the Florence Tobacco Co., enclosing a blank bank note "for your company to sign and endorse, and after the seven directors have endorsed it, we will be glad to discount it for you," and stating that the net credit would be $3,508.72. The note was in this form at the outset and at the close, except as to change of dates at renewal:

"$3.660. Charleston, S. C., January 1st, 1892. Six months after date, we promise to pay to the order of Florence Tobacco Co. $3.660, at Carolina Savings Bank. Value received. Florence Tobacco Co., F. M. Rogers, Pres."

Endorsed on back: "Florence Tobacco Co., F. M. Rogers, jr., President. F. M. Rogers, jr., B. F. Williamson, George W. Brown, P. A. Wilcox, C. M. Covington, Smilie A. Gregg."

This note was renewed from time to time until its last renewal, which occurred on February 4th, 1893, when it was in the exact shape as above copy, except "*February 4, 1893*," was substituted for "*January 1st, 1892*." At date of maturity of this last renewal, it was presented for payment, and not being paid, it was duly protested. The notary public by whom it was protested, not knowing the post office address of the seven directors, enclosed all the notices of protest under one cover, postage prepaid, addressed to Flor-

ence Tobacco Co., to F M. Rogers, jr., President, Florence, S. C. The following copy of correspondence is inserted, as it may enter very largely into the decision of the questions raised by appeal:

"Florence, S. C., August 5, 1893. Mr. George W. Williams, Pres., Charleston, S. C.—Dear Sir: Enclosed please find draft for $850. I was positive that I would be able to make the payment, $1,800, as I wrote you, but our recent insurance matter has not been entirely settled up, and we failed to get the money from this source to-day, as we expected. Certainly inside of thirty days, I will send you a remittance of $1,000, which can be credited on enclosed renewal note. This note is drawn for six months, like other. I made it for this time, as we don't want to ask your indulgence again, and am certain that the whole amount can be taken up by then. After deducting discount for renewal of $3,000, credit balance on same. The memorandum enclosed will explain what I mean. The $3,000 is more than required, but not knowing exactly what I could raise, had to get endorsement of parties to-day, while they were in town, to get it in to you by maturity. You will find that the endorsers, with exception of myself, are all new names. They are all good men, however, and each worth many times the amount endorsed for. The paper is good, beyond all question. As I wrote you, the Florence Tobacco Company is owned by myself and two or three others. Former directors have nothing to do with it; therefore, could not ask them to endorse. Regretting that I was unable to remit amount as stated, and hoping that it will be satisfactory, which I assure you is the very best that could be done. Yours truly, F. M. Rogers, jr."

"Charleston, S. C., August 7, 1893. Mr. F. M. Rogers, Pres., Florence, S. C.—Dear Sir: We are duly in receipt of your valued favor of the 5th, and note contents: The six months note for $3,000 of the Florence Tobacco Co., and $850 draft on Florence, to take up the note of the Florence Tobacco Co. due to-day, amounting to $3,660. If you will

refer to our letter of the 31st ult. you will see that we made use of the following words: 'If you will pay one-half of the note due August 7, we will renew the balance. We beg herein to hand you renewal note for one-half amount of old note. Please sign and return to us, together with the discount and draft on Charleston for the balance.' You will observe, in the first place, that you have not paid one-half, nor have you sent draft on Charleston, but one on Florence, for portion of the amount. We note, also, a change of endorsers. When we stated that we would renew, we meant, of course, with the same endorsers. We are very much disappointed that you have not taken up the note, which will have to be protested to-day. If you will send down the $1,000 you expected, and instruct us to forward draft on Mr. Wilcox for collection, and send the $1,830 note which we sent you on the 31st, signed with the same endorsers as are upon the old note, we will wait on you the length of time which is expressed in the note. We presume that you have realized on the insurance ere this. We are sorry that the note will have to be protested, but you will see that it is not our fault at all. We are, yours very truly, George W. Williams, jr., V. P."

"Charleston, S. C., August 9, 1893. Mr. F. M. Rogers, Jr., Pres., Florence, S. C.—Dear Sir: Yours 8th to hand, and noted. Ours of 7th explained our position fully. We do not wish to cause you any inconvenience, and since you say in yours of the 5th inst. the $3,000 note can be met at maturity, we will make this proposition to you: We will collect the $850 on Mr. Wilcox and discount the $3,000 note, and hold the protested paper until the $3,000 note is paid; will then send you the $3,660 paper. This will give you the time which you wish, and cannot cause you any inconvenience. We await your reply before discounting the $3,000 paper, but forward the $850 paper to-day for collection, as instructed by you. Yours very truly, George W. Williams, Jr., V. P."

"Florence, S. C., 8–16, 1893. Mr. George W. Williams,

Pres., Charleston, S. C.—Dear Sir: Your favor of the 9th at hand, and carefully noted. Have delayed writing, as I hoped to be in your city this week. You can arrange the matter as you suggest, namely, discount the $3,000, and still hold the $3,660 note till former is paid. In the meantime, if I can arrange the whole matter, I presume you will not object. Yours truly, F. M. Rogers, jr., Pres."

"Charleston, S. C., August 18, 1893. Mr. F. M. Rogers, Jr., Pres., Florence, S. C.—Dear Sir: Yours of 8–16 to hand, and noted. It occurs to us as the best plan to handle the $3,660 past due paper will be to pass to its credit the $850 which was paid in Florence, less the charges, 75 cents bank charges and protest fees $2.15. When the $3,000 note is paid, we pass its proceeds also to the $3,660 note, and, after charging up interest, send you a full statement. Will be glad to have you settle it sooner, if you desire to do so. Yours truly, George W. Williams, jr., V. P."

Stripped of useless verbiage, the first inquiry should be, how did these seven directors—only six of whom are respondents affected by this appeal—sign their names on the back of the note in question? Was it as joint makers or was it as endorsers? It is unquestionable law that, when one person signs the note of another person, payable to a third person, he may, in the act of signing, limit by words then written the character or relation to the note that he agrees to assume. He may add the word "surety" to his name or the word "endorser," and when he does so the payee of the note takes the same with this qualification to such signature—it is a part of his contract that binds the holder of the note. This same result may and will follow if the holder makes an agreement at the time he takes the note that the signature is that of "surety" or "endorser." It is true, that this last result will not obtain in the event such negotiable note passes into the hands of the holder without notice thereof. Now, consider the case at bar. Here the Carolina Savings Bank took this note, and has held it ever since it was made, with the positive under-

standing and agreement that the proceeds of the note, when discounted by it, should pass to the credit of the Florence Tobacco Co. as the maker of the note, and that the seven directors should endorse the same. Banks use the technical terms connected with banking with a full knowledge of their meaning. When it uses the words "endorsed" or "endorser," it is bound by the meaning of those terms under the law merchant. If one or more persons "endorse" the note of another, it transfers the note thereby endorsed, either in blank, which makes it payable to bearer, or when it specifies the name or names of endorser or endorsers, as the case may be, it is what is called a special endorsement, and the endorser or endorsers, as the case may be, are entitled to all the rights of the law merchant applying to bills of exchange—one of which is notice of dishonor. In the case at bar the correspondents of the bank, both at the time the note in question was negotiated and discounted as well as ever afterwards until this action was commenced, shows that the plaintiff bank treated these respondents as "endorsers" and not as joint makers. If it was a part of their contract that these respondents should be regarded as "endorsers" and not as joint makers, the plaintiff bank must be held to such contracts. The evidence submitted by it at the hearing showed that the plaintiff bank did so contract with these respondents, and there being no testimony to the contrary, the Circuit Judge was not in error. Having reached the conclusion that, by the contract of the parties here, these respondents were "endorsers" and not joint makers, the necessity does not exist for us to treat of the very interesting question suggested in the argument here by the plaintiff's counsel that, under our own decisions, beginning with *Beaubien* v. *Stoney*, 2 McM., 313; *Baker* v. *Scott*, 5 Rich., 305; *Carpenter* v. *Oaks*, 10 Rich., 317; *McCreary* v. *Bird*, 12 Rich., 554; *Watson* v. *Barr*, 37 S. C., 464; *Johnson* v. *McDonald*, 41 S. C., 81, the note here should be viewed as made by the respondents or joint makers and not as "endorsers." We are still satisfied

with these decisions, but it must be remembered that in no one of those cases was any proof that the parties, there held liable as joint makers, had contracted that they should not be so regarded. All the exceptions covered by this ruling are disallowed.

Having held that there was no error in the Circuit Judge in relation to these respondents as endorsers of the note in question, it is apparent that no other question suggested by the appeal need be considered.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.